UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY ALLEN ROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11-cv-01110-TWP-DKL |
| | ) |
| AUTUMN BROWN, CORRECTIONAL | ) |
| OFFICER CARLILE, DEBBIE WALLEN, | ) |
| DOCTOR MITCHIEF, MARY MANSFIELD, | ) |
| and SERGEANT FLOCKHART,[1] | ) |
| | ) |
| Defendants. | ) |

## ENTRY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the Defendants' motions for summary judgment. On January 15, 2011, Jeffrey Allen Rowe ("Mr. Rowe"), an inmate at the Pendleton Correctional Facility ("Pendleton"), pulled a muscle in his back while moving his property box. He was dissatisfied with the treatment he received for his pulled muscle and associated pain and this action ensued. Specifically, Mr. Rowe alleges Defendants Correctional Officer Carlile, Sergeant Flockhart, and Nurse Deborah Wallen delayed treatment by medical staff for two days and Defendants Nurse Autumn Brown, Mary Mansfield ("Ms. Mansfield"), and Doctor Mitcheff violated prison policies and refused to provide Mr. Rowe any treatment after his protocol pack of Ibuprofen ran out. As a result, Mr. Rowe experienced pain for two weeks until his back healed on its own. For the reasons explained below, Defendants' Motions for Summary Judgment (Dkt. 81 and Dkt. 86) are **GRANTED.**

### I. STANDARD OF REVIEW

Summary judgment is appropriate when the movant shows that there is no genuine dispute

---

1 Defendant Debbie Wallen's name is actually Deborah Wallen and defendant Doctor Mitchief's name is actually spelled Mitcheff.

as to any material fact and that the movant is entitled to judgment as a matter of law. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Proc. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Proc. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Proc. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Proc. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Proc. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims,

not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

## II. MATERIAL FACTS

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Rowe as the non-moving party with respect to the motions for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

### A. January 15, 2011

At all times relevant to his Complaint, Mr. Rowe was incarcerated at Pendleton. On January 15, 2011, Correctional Officer Carlile and Correctional Sgt. Flockhart were both assigned to work the night shift for G Cell House. At approximately 5:30 p.m., Mr. Rowe injured his back while lifting his property box. At the time of the injury, Mr. Rowe believed that he had pulled a muscle. His self-diagnosis was later confirmed by medical staff. As a result of the pulled muscle, Mr. Rowe experienced pain which he found to be excruciating when moving.

At approximately 6:30 p.m., Officer Carlile walked down Mr. Rowe's range and Mr. Rowe informed Officer Carlile that he had pulled his back muscle moving his property box, that he could not move without excruciating pain, and that he wanted immediate emergency medical treatment.

3

Officer Carlile informed Mr. Rowe that he needed to finish his range walk, but after that was completed, he would speak with Sgt. Flockhart about his request. After finishing his range walk, Officer Carlile told Sgt. Flockhart that Mr. Rowe had pulled a muscle in his back and was requesting to be seen by medical staff.

At approximately 6:45 p.m., Mr. Rowe told Sgt. Flockhart about his back injury and symptoms and asked for medical attention. In response, Sgt. Flockhart told Mr. Rowe that he would call medical staff. Mr. Rowe believes that the call was never made.[2] At approximately 8:00 p.m., Officer Carlile gave Mr. Rowe a Request for Health Care form ("RFHC"). Officer Carlile explained that because Mr. Rowe is not suffering a life threatening emergency immediate treatment would not be provided and that he was required to submit a RFHC. Officer Carlile then told Mr. Rowe that neither he nor Sgt. Flockhart would call the medical department because it would be a waste of time.[3]

At approximately 9:30 p.m. that evening, as Nurse Wallen was making rounds and delivering medication to inmates, Mr. Rowe walked to his cell door and informed her that he was in pain and needed "immediate emergency medical attention."[4] Based on her assessment and

---

[2] However, Sgt. Flockhart and Officer Carlile testified that Sgt. Flockhart called the infirmary and informed medical staff of Mr. Rowe's complaints. Sgt. Flockhart was told by medical personnel to give Mr. Rowe a Request for Health Care form. Sgt. Flockhart then proceeded to give a Request for Health Care form to Officer Carlile to give to Mr. Rowe.

[3] Based on this statement, Mr. Rowe disputes that Sgt. Flockhart ever called the medical department, but he has no evidence to dispute Officer Carlile and Sgt. Flockhart's testimony that they made the call. Officer Carlile and Sgt. Flockhart persuasively argue that by 8:00 p.m. the medical staff had been called and that it would be a waste of time to call the department again. For purposes of this Motion, however, Mr. Rowe's version of events—that the medical department was not contacted—is accepted as true.

[4] Nurse Wallen testified that she observed Mr. Rowe walking around in his cell without difficulty during their conversation. Mr. Rowe disputes this testimony stating that he was not moving around while Nurse Wallen was in his presence, but admits that after she left he moved with great difficulty over to and got onto his bed. For the purposes of this Motion the Court accepts as true Mr. Rowe's statement that Nurse Wallen did not observe him moving about the cell without difficulty.

4

medical judgment, Nurse Wallen determined that Mr. Rowe's condition was not an emergency and she instructed Mr. Rowe to submit a RFHC to the medical department for triage.

That same evening, Mr. Rowe submitted a RFHC regarding lower back pain.

**B.     January 16-17, 2011**

On January 16, 2011, Mr. Rowe was referred for an appointment with medical staff. Less than 48 hours after his injury, on January 17, 2011, at 4:19 a.m.,[5] Mr. Rowe received an examination from Alana G. Brown, RN,[6] and received a five (5) day supply of Ibuprofen, which was approved by physician William Wolfe, M.D.[7] Mr. Rowe also received instructions to monitor his condition and follow-up with nursing staff if his condition did not improve. During the nursing examination of Mr. Rowe's lower back on January 17, 2011, Alana G. Brown, RN, noted that Mr. Rowe's range of motion was satisfactory with encouragement, he was capable of slowly ambulating on his own, and there was no swelling, discoloration, or numbness in his lower back.

Mr. Rowe followed Alana G. Brown's instructions. On January 23, 2011, after the Ibuprofen ran out Mr. Rowe submitted another RFHC. This RFHC states: "The pulled muscle in my back still hurts really bad. I need to either see the doctor, or, get some more Ibuprofen for it. Thank You!" Dkt. 83-2 at p. 5. Defendant Nurse Autumn Brown responded to the RFHC on January 25, 2011, stating, "[p]lease purchase more ibuprofen off of commissary. If pain persists longer than 3-4 weeks, put in another [RFHC]." *Id.*

---

5  See Dkt. 51-2 at 2.

6  Alana Brown should not be confused with Defendant Autumn Brown.

7  The Ibuprofen was "prescribed" by medical staff, but the 200 mg. dose of Ibuprofen prescribed is generally available as an over the counter pain reliever.

On January 26, 2011, Mr. Rowe sent yet another RFHC, stating that he could not order anything from commissary because he is indigent and even if he could, it would take two weeks to receive Ibuprofen off commissary and he is in pain now. Dkt. 83-2. Nurse Autumn Brown responded on January 27, 2011, stating that Ibuprofen has to be purchased off commissary.

**C.      Michael Mitcheff, D.O.**

Dr. Mitcheff has been licensed to practice medicine in Indiana since 1988. He is currently the Regional Medical Director of Corizon, Inc., the company that contracts with the Indiana Department of Correction to provide medical care to various prisons throughout Indiana. As Regional Medical Director, he hires facility physicians, reviews requests for non-formulary medications, reviews requests for outside consultations, and makes alternative treatment suggestions, if appropriate. Dr. Mitcheff was not personally involved in the medical care provided to Mr. Rowe following his complaints of lower back pain on January 15, 2011.

Upon his review of the care provided to Mr. Rowe, Dr. Mitcheff opines based on his training, education, experience, and personal knowledge that Mr. Rowe's strained back muscle was not a serious medical condition and did not require emergency medical treatment. Nor was it necessary to provide Mr. Rowe additional over-the-counter medication for his back following the initial five-day supply he was given.

**D.      Deborah Wallen, L.P.N.**

Nurse Wallen has been a licensed practical nurse in Indiana since 1984. She has worked as an L.P.N. at Pendleton since December 18, 2008. She is personally familiar with Mr. Rowe. In her experience at this facility, approximately five to ten prisoners per day, verbally request pain medication and immediate medical attention for various ailments as she passes out medications

during her rounds.  Stopping to address every prisoner's complaints regarding non-emergency conditions would inhibit her ability to complete her medication rounds. Nurse Wallen determined that Mr. Rowe's condition was not an emergency and instructed him to follow the standard procedures for requesting and accessing medical care.

**E.     Nurse Autumn Brown, BSN**

Nurse Brown obtained her BSN in 2009 and during January 2011 was working as a facility nurse at Pendleton.   In accordance with Corizon's Healthcare Services Directive policies, known as HCSDs, Nurse Brown was not authorized to provide over-the-counter medication unless there was a protocol in place or a provider's order. Additionally, nursing staff such as Nurse Brown are prohibited from renewing drug orders.   Based on her training, knowledge, and experience, Nurse Brown did not perceive a risk of harm to Mr. Rowe and she contends that she had no intention of ignoring a risk of physical harm to him.

**F.     Mary Mansfield**

In January 2011, Ms. Mansfield was the Health Care Administrator at Pendleton. In that role, she did not have the authority to dictate the type of treatment provided to an inmate or determine what medication was, or was not, provided to him.   She often responded to informal grievances, but did not have the responsibility of responding to formal grievances.   On January 26, 2011, Mr. Rowe sent a letter he called an "informal grievance."   This letter requested that Ms. Mansfield immediately change the policy related to the provision of over-the-counter medications. Ms. Mansfield did not reply to this informal grievance because she noticed that Mr. Rowe had already filed a formal grievance which was being processed, which she noted on the letter from Mr. Rowe.   Ms. Mansfield did not have the authority to implement the policy changes that Mr.

Rowe requested. Nor did she have the authority to instruct nurses to violate the policies that were in place. Based on her review of medical records and Mr. Rowe's letter, Ms. Mansfield was not aware of a risk of harm to Mr. Rowe and did not intend to disregard a risk of harm to him.

### III. DISCUSSION

Each of the Defendants argues that they are entitled to summary judgment in their favor because Mr. Rowe's injury did not constitute a serious medical need and there was no risk of serious bodily harm to Mr. Rowe. In addition, the Defendants assert that there is no evidence that they were deliberately indifferent to Mr. Rowe's serious medical needs. Mr. Rowe disputes the Defendants' conclusions.

**A.  Eighth Amendment Claim**

The Eighth Amendment prohibits cruel and unusual punishment; that guarantee encompasses a prisoner's right to medical care. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But negligence, even gross negligence, does not violate the Constitution. *Id.* at 105–06; *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Only deliberate indifference or worse in the face of a serious medical need will do. *Estelle*, 429 U.S. at 103–04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

A claim based on deficient medical care must demonstrate two requirements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition. This is because deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (construing *Estelle*).

B.  **Serious Medical Need**

For the objective element, the prisoner's medical condition must be one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). While a "serious medical need" encompasses medical conditions less critical than life threatening, not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Id.* at 1370-72.

The Defendants assert that they are entitled to summary judgment because Mr. Rowe's back injury fails to meet the objective element of the deliberate indifference standard. They contend his injury was not sufficiently serious.

Mr. Rowe argues in response that his injury is adequate to state a claim because this case is analogous to *Estelle v. Gamble*, 429 U.S. 97. In *Estelle,* the inmate based his medical care claim solely on the lack of diagnosis and inadequate treatment of his back injury, which had been diagnosed by prison doctors as a lower back strain and treated with muscle relaxants and pain medication.

> In dismissing the Eighth Amendment claim against one defendant (because that claim, at most, alleged medical malpractice) and remanding the claims against the other defendants for further consideration, the Court never questioned that the inmate's allegations of severe pain from his back injury were sufficiently serious to support his Eighth Amendment claim.

*See Gutierrez*, 111 F.3d at 1371 (discussing *Estelle*, 429 U.S. at 103). But the allegations in *Estelle* (accepted as true in evaluating the motion to dismiss) reflect a more severe injury than what the evidence could support in this case. In *Estelle,* inmate Gamble alleged that his injury was the

9

result of a 600 pound bale of cotton falling onto him while he was unloading a truck. He alleged that he suffered intense pain and was given prescription strength pain relievers and muscle relaxers. Nearly a month later, Gamble's back hurt as much as it had the first day and he refused to work because of the pain. The pain continued for at least three months and Gamble was eventually hospitalized.

In this case, the evidence reflects that Mr. Rowe pulled a muscle in his back while attempting to move his property box. In *Estelle* there was no reason to question the back strain diagnosis, whereas in this case there was no actual diagnosis. When Mr. Rowe presented to medical staff, there was no objective evidence of any injury, only his self-reported symptoms including pain. In addition, there is no evidence that Mr. Rowe complained to any of the Defendants regarding his back pain after January 26, 2011, which is just 11 days after his injury. Thus, the relevant time period to be considered is less than two weeks. Mr. Rowe acknowledges during this time he received a five-day supply of Ibuprofen and there is no suggestion that this medication did not alleviate his pain. The fact that the "excruciating pain" he experienced was mitigated by an over-the-counter medication reflects that the pain was not of a nature that could only be treated with prescription strength pain relievers.

At this point in the litigation, the Court accepts that Mr. Rowe may have felt "excruciating" pain, but an objective observer would not reach the same conclusion. There is no evidence that Mr. Rowe presented in a manner which would reflect that of someone in excruciating pain. He was not crumpled on the floor, he was able to move on his own, he was not crying, he was able to communicate clearly, and he did not exhibit any outward signs of injury. When Mr. Rowe was examined, he was capable of slowly ambulating on his own, and there was no swelling,

discoloration, or numbness of his back. The evidence is devoid of any physical or behavioral manifestations upon which an objective observer could conclude that Mr. Rowe was in excruciating pain.

In conclusion, the injury reported and confirmed in this case—that is, back pain from a pulled muscle lasting less than two weeks which could be adequately treated with over-the-counter medication—is not a serious medical need under the Eighth Amendment. *See also Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996) (finding that not giving a prisoner anesthetics for a partially torn off toe-nail "is not the type of barbaric treatment the Eighth Amendment was intended to prevent."); *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (stating that minor aches and pains, do not rise to the level of a serious medical need).

The Defendants are entitled to summary judgment on this basis.

**C.** **Deliberate Indifference**

Even if Mr. Rowe's pulled back muscle could be found to be a serious medical need, the Defendants are entitled to summary judgment because there is no evidence that they were deliberately indifferent to his pain.

**1.** **Immediate Medical Treatment**

Mr. Rowe alleges that the actions of Sgt. Flockhart, Officer Carlile, and Nurse Wallen caused a two day delay in his ability to access Ibuprofen to treat what he believed to be, and what was later confirmed to be, a pulled back muscle. Specifically, Mr. Rowe asserts that these Defendants failed to contact the medical department to report a medical emergency and instead provided him with a health care request form. Mr. Rowe suggests that his pulled muscle should have been treated as a medical emergency because he was in "excruciating pain."

11

A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Estelle*, 429 U.S. at 104–05; *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). The Seventh Circuit has explained that "[d]elay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). *See e.g., Grieveson v. Anderson*, 538 F.3d 763, 778–80 (7th Cir. 2008) (guards could be liable for delaying treatment for painful broken nose by at least a day-and-a-half); *Edwards v. Snyder,* 478 F.3d 827, 831 (7th Cir. 2007) (finding that two day delay for proper treatment of injured finger—with a dislocated and fractured bone sticking through the skin and exposed—because doctor did not want to be bothered during his New Year celebrations stated a claim); *Warman v. Funk,* 119 Fed. Appx. 789, 791, 2004 WL 3049817, *2 (7th Cir. 2004) (ten day delay in providing prescription pain medication did not establish deliberate indifference); *Gutierrez,* 111 F.3d at 1374 (dismissal for failure to state a claim proper because six day wait to see a doctor was not unreasonably long for infected cyst deemed not that severe); *Cooper*, 97 F.3d at 916–17 (presented jury question "whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating").

There is no evidence upon which a reasonable jury could find that Sgt. Flockhart, Officer Carlile, or Nurse Wallen were deliberately indifferent to Mr. Rowe's serious medical needs. Despite Mr. Rowe's claim that he was experiencing excruciating pain there is no evidence that he displayed any physical or behavioral manifestations of this pain. Under these circumstances, the Defendants were neither required nor expected to believe everything Mr. Rowe told them.

Because Sgt. Flockhart, Officer Carlile, and Nurse Wallen did not believe that Mr. Rowe was in excruciating pain and requiring emergency medical treatment, they were not deliberately indifferent to his serious medical needs. *Olson v. Morgan*, -- F.3d --, 2014 WL 1687802, *4 (7th Cir. April 30, 2014) ("prison guards are neither required nor expected to believe everything inmates tell them); *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004) ("a prisoner's bare assertion is not enough to make the guard subjectively aware of a risk, if the objective indicators do not substantiate the inmate's assertion.").

Even if Sgt. Flockhart and Officer Carlile refused to contact the medical staff to report that Mr. Rowe had a medical emergency, they did provide him with a RFHC. In addition, Mr. Rowe was seen by Nurse Wallen a few hours later while she was passing out medications. Nurse Wallen reached the same conclusion as Sgt. Flockhart and Officer Carlile, which is that there was no genuine medical emergency and that the proper course was for Mr. Rowe to submit a RFHC for triage. Mr. Rowe was, in fact, able to submit a RFHC that night. That request was reviewed the next day and Mr. Rowe was referred for an appointment. From these facts, it is clear that Sgt. Flockhart, Officer Carlile, and Nurse Wallen did not disregard Mr. Rowe's health, but rather facilitated his ability to pass his medical concerns on to the appropriate personnel through a RFHC. The record reflects that Sgt. Flockhart, Officer Carlile, and Nurse Wallen acted appropriately, did not delay Mr. Rowe's access to medical care, and were not deliberately indifferent to Mr. Rowe's serious medical needs.

### 2. Additional Ibuprofen

Mr. Rowe argues that Defendants Nurse Autumn Brown, Ms. Mansfield, and Dr. Mitcheff are liable to him because they are responsible, directly or indirectly, for denying him additional

Ibuprofen after his 5 day supply ran out. But these individuals cannot be liable because there is no evidence that they ever learned that Mr. Rowe had a serious medical need. Although Mr. Rowe claims that his pulled back muscle caused him excruciating pain, his health care requests to Nurse Autumn Brown and letter to Ms. Mansfield make milder claims. *See Olson,* 2014 WL 1687802, *5 (finding that letters requesting aspirin for pain were insufficient evidence from which defendant could have inferred that inmate had a serious medical need, let alone evidence that she actually drew that inference). In both of the RFHCs, Mr. Rowe seeks either to see a doctor or to get more Ibuprofen for his painful pulled back muscle. In response, Mr. Rowe was directed to purchase more Ibuprofen from commissary. While this response may be callous, the health care requests were not sufficient to put Nurse Autumn Brown on notice that Mr. Rowe had a serious medical need. In addition, there is no evidence that Nurse Autumn Brown inferred that Mr. Rowe had a serious medical need from his health care requests.

Mr. Rowe also wrote an informal grievance to Ms. Mansfield complaining about his access to over-the-counter medicines such as Zantac and Ibuprofen. Mr. Rowe explained that because he is indigent he is unable to access over-the-counter medications to alleviate his pain. Nowhere in that letter does Mr. Rowe state that he was in pain at the present time. See Dkt. 83-6 at p. 6. These circumstances are insufficient to conclude that Ms. Mansfield was deliberately indifferent to Mr. Rowe's serious medical needs.

As to Defendant Dr. Mitcheff, Mr. Rowe has not developed any of his claims against the doctor. Mr. Rowe's response to the motions for summary judgment sets forth his claims against each of the Defendants. See Dkt. 92, pps. 18- 23. Dr. Mitcheff is not mentioned in this section. There is no dispute that Dr. Mitcheff was not involved in the treatment decisions for Mr. Rowe's

strained back muscle. Thus, Dr. Mitcheff did not have the personal involvement necessary to establish liability under § 1983 and he is entitled to summary judgment on this basis. "[T]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)). Such personal responsibility exists if the conduct causing a constitutional deprivation occurred at the individual's direction or with his knowledge or consent. *Gentry*, 65 F.3d at 561 (citing *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985)(other citations omitted)).

      **3.**     **Health Care Services Directives.**

Mr. Rowe apparently intends to assert a claim that certain Health Care Services Directives ("HCSDs") issued by the Indiana Department of Correction are constitutionally inadequate. He suggests that Dr. Mitcheff and Ms. Mansfield are liable for their role in the creation or maintenance of these policies. The relevant directives appear at Docket 83-5. In particular, HCSDs in place at the time indicate that over-the-counter ("OTC") medication will not be provided for minor problems "unless these conditions cause or have the potential to cause mortality or significant morbidity." Dkt. 83-5 at p. 7. The policy goes on to state that "[i]n adult facilities, offenders are expected to purchase from the offender commissary OTCs for use in other than serious health conditions." *Id.* Additionally,

> …offenders who purchase OTCs are expected to utilize their existing Inmate Trust Fund account. Indigent offenders (or offenders who choose to spend their money on other items) may have difficulty obtaining OTCs; this issue will not be addressed by health care staff. Rather, Facility Heads shall have the authority to provide or withhold these items in much the same way that other hygiene items are managed.

*Id.* at p. 8. "Offenders who utilize sick call in an effort to obtain OTCs available in the

commissary or substitutes for them (for other than serious health conditions) shall not be provided with them." *Id*.

The HCSDs at Docket 83-5 are not facially unconstitutional nor is there any evidence that they were unconstitutional as applied in this case. The Eighth Amendment does not require state officials to supply Mr. Rowe with unlimited over-the-counter medications on demand under the circumstances presented in this case. In addition, there is no admissible evidence which would support a claim that either Dr. Mitcheff or Ms. Mansfield was responsible for the adoption of the policies at issue or the implementation of them in the circumstances relevant to this action. Accordingly, any claim based on a theory that the HCSDs are unconstitutional is **DENIED**.

## IV. CONCLUSION

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Rowe has not identified a genuine issue of material fact as to his claims in this case, and the Defendants are entitled to judgment as a matter of law. Therefore, Defendants' Motions for Summary Judgment (Dkt. 81 and Dkt. 86) are **GRANTED.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 05/09/2014

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ Hon. Tanya Walton Pratt, Judge
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ United States District Court
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ Southern District of Indiana

DISTRIBUTION:

Jeffrey Allen Rowe, #116017
Wabash Valley Correctional Facility
Electronic Service Participant -- Court Only

James F. Bleeke
BLEEKE DILLON CRANDALL PC
jim@bleekedilloncrandall.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL PC
jeb@bleekedilloncrandall.com

Rachel A. East
BLEEKE DILLON CRANDALL PC
rachel@bleekedilloncrandall.com

Dino L. Pollock
OFFICE OF THE INDIANA ATTORNEY GENERAL
dino.pollock@atg.in.gov

T. Allon Renfro, Jr.
OFFICE OF THE INDIANA ATTORNEY GENERAL
allon.renfro.pollock@atg.in.gov